# United States Court of Appeals
## For the First Circuit

No. 11-1247

GEORGE J. NARDI,

Petitioner, Appellant,

v.

PETER PEPE, SUPERINTENDENT,
MASSACHUSETTS CORRECTIONAL INSTITUTE, CONCORD,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Stahl, Circuit Judges.

Stewart T. Graham, Jr. with whom Graham & Graham was on brief for appellant.
Jennifer L. Sullivan, Assistant Attorney General, Criminal Bureau, with whom Martha Coakley, Attorney General, was on brief for appellee.

November 22, 2011

**BOUDIN**, <u>Circuit Judge</u>.  George Nardi was convicted of first-degree murder in a Massachusetts state trial court for killing his mother, Dianne Barchard.  Nardi later sought federal habeas relief and now, following its denial, presses a single claim on appeal: he argues that the state trial court violated his rights under the Confrontation Clause of the Sixth Amendment by admitting expert opinion testimony resting on what he contends was inadmissible testimonial hearsay.

The underlying facts are drawn from the Massachusetts Supreme Judicial Court's ("SJC") opinion affirming Nardi's conviction, <u>Commonwealth</u> v. <u>Nardi</u>, 893 N.E.2d 1221 (Mass. 2008). <u>See</u> 28 U.S.C. § 2254(e)(1) (2006).  At the time of Barchard's death, Nardi, then thirty-seven years old, lived with Barchard, then fifty-nine years old, in her apartment.  The two had what the SJC called a stormy relationship.  In December 2002, Barchard began telling friends--and Nardi became aware--that she planned to move into elderly housing the following month, where Nardi could not stay with her.

Shortly thereafter, Barchard disappeared.  This happened a few months after Nardi damaged beyond repair his car in a DUI crash, preventing him from driving to work and further straining his relationship with his mother, as he had less money and drank more than usual.  After his mother's disappearance, Nardi told her friends various lies about her whereabouts.

-2-

Eventually, alerted by one of Barchard's friends who was alarmed by her absence, authorities discovered Barchard's decomposing body lying under a blanket in a bedroom of her apartment in which Nardi continued to live. Nardi had concealed Barchard's disappearance from her friends and family for about two weeks; she had been dead most of that time. Forensic evidence suggested that he had mopped up a blood trail going from the kitchen to the bedroom where Barchard was found.

Dr. James Weiner performed an autopsy on Barchard's body and recorded his findings in an autopsy report. The report noted bruising on her face consistent with suffocation by the pressing of a hand over the mouth and nose, as well as signs of limited heart disease. Dr. Weiner concluded that the cause of death was consistent with asphyxia by suffocation. The state charged Nardi with first-degree murder and his case was scheduled for trial.

Before that trial, Dr. Weiner retired to Florida and was unable to return to testify because of a medical condition. At trial, the prosecution called instead Dr. Edward McDonough who had extensive experience as a medical examiner but no involvement in Barchard's autopsy. Before testifying, Dr. McDonough reviewed Dr. Weiner's autopsy report, as well as autopsy photographs, tissue slides and a toxicology report, and formed what he described as his own opinion about the cause of Barchard's death.

Dr. McDonough testified during Nardi's trial that in his expert opinion, the cause of Barchard's death was consistent with asphyxia by suffocation. He also testified to several facts derived from the autopsy report, and revealed that Dr. Weiner had also concluded Barchard was suffocated. The government additionally introduced evidence of the contentious relationship between Nardi and Barchard, her plans to move out, his efforts at concealment of the body, and evidence concerning the clean-up of the blood trail in the apartment.

Nardi's defense at trial, supported by his own testimony, was that Barchard died of a heart attack and that he had concealed her death out of panic and bad judgment. Nardi offered his own medical expert to interpret the autopsy findings regarding Barchard's heart disease. Nardi's counsel focused his cross-examination of Dr. McDonough on Barchard's heart condition, the lack of certain injuries consistent with some forms of suffocation, and possible inconsistencies between findings in the report.

At the end of the six-day trial, the jury deliberated for several hours and then convicted Nardi of first-degree murder. He was thereafter sentenced to life in prison. On direct review, the SJC upheld the conviction, rejecting Nardi's claims based on the Sixth Amendment's Confrontation Clause, see Crawford v. Washington, 541 U.S. 36 (2004), and its state constitutional equivalent, Mass. Const. pt. 1, art. 12. Nardi, 893 N.E.2d at 1229-35.

-4-

The SJC first concluded that admission of Dr. McDonough's opinion based on the autopsy report did not standing alone violate the Confrontation Clause; Dr. McDonough, said the SJC, was providing his own opinion and it in turn rested on what were traditional and permissible sources of expert knowledge. Nardi, 893 N.E.2d at 1229-31. Nardi, the SJC concluded, was free to cross-examine Dr. McDonough regarding the strengths and weaknesses of the foundation of that opinion. Id.

The SJC did view as a violation of the Confrontation Clause Dr. McDonough's testimony revealing portions of the content of Dr. Weiner's autopsy report. But it found under state procedural law that this claim--not preserved at trial--was subject to review only for error that created a "substantial likelihood of a miscarriage of justice." Nardi, 893 N.E.2d at 1233-34. Because Nardi himself used the autopsy report to support his heart attack theory, the SJC saw no substantial likelihood of a miscarriage of justice. Id.

Repairing to the federal habeas court, Nardi argued that both Dr. McDonough's opinion and his testimony repeating in part contents of the autopsy report violated Nardi's Sixth Amendment rights. The district court denied both claims, concluding that at the time of the SJC decision, neither claim was supported by "clearly established" law under then-existing Supreme Court precedent; as to the latter claim, the district court also ruled

that it was procedurally defaulted and that any error would have been harmless given Dr. McDonough's testimony as to his own opinion.

The district court granted a certificate of appealability, 28 U.S.C. § 2253(c); Fed. R. App. P. 22, limited to the issue whether it was clearly established law at the time of Nardi's trial that an autopsy report was inadmissible testimonial hearsay and, if so, whether "a testifying expert's opinion may rely on inadmissible [testimonial] hearsay." Our concern here is with Dr. McDonough's opinion testimony rather than the references made by him to the original report and to Dr. Weiner's views.[1]

Where a state court decides on the merits a question of federal law--here, the admissibility of Dr. McDonough's own opinion based in part on an autopsy report prepared by a non-testifying witness--a federal habeas court may grant the writ only if the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This narrowed habeas remedy was an effort by Congress to prevent federal courts in habeas proceedings from second-guessing state

---

[1]The SJC held that any objection to the references was not preserved, so an independent and adequate state ground bars federal habeas review. Coleman v. Thompson, 501 U.S. 722, 749-50 (1991). Nardi does not contend otherwise or suggest this case falls within an exception to the procedural default rule.

-6-

courts in doubtful cases. Williams v. Taylor, 529 U.S. 362, 404, 406, 411 (2000).

Nardi says that the state court here did not decide the Confrontation Clause question on the merits and relied only on state law, see DiBenedetto v. Hall, 272 F.3d 1, 6-7 (1st Cir. 2001), cert. denied, 535 U.S. 1024 (2002), but he is wrong. The SJC cited both the seminal Crawford decision of the Supreme Court and prior state cases dealing with the federal right. Nardi, 893 N.E.2d at 1227, 1229-31. Indeed, the SJC made clear at the outset of its discussion that Massachusetts' state constitution provides protection coextensive with that of the Sixth Amendment on confrontation issues. See Nardi, 893 N.E.2d at 1229 n.10.

Under section 2254(d)(1), only Supreme Court precedent in effect at the time of the state court adjudication on the merits counts as "clearly established Federal law," Greene v. Fisher, No. 10-637, 2011 WL 5335411, at *3-4 (U.S. Nov. 8, 2011); the only pertinent Supreme Court precedent that applied at the time of the SJC's decision affirming Nardi's conviction was Crawford. In our view, Crawford (as matters stood when the SJC decided Nardi's appeal) did not "clearly establish" that either the autopsy report or Dr. McDonough's opinion in partial reliance upon it were inadmissible under the Confrontation Clause.

We start with Nardi's predicate contention that the autopsy report Dr. McDonough partly relied on was testimonial

-7-

hearsay forbidden by Crawford. Crawford, reversing longstanding precedent to the contrary, e.g., White v. Illinois, 502 U.S. 346, 356-57 (1992); Ohio v. Roberts, 448 U.S. 56, 62-66 (1980), held that the Confrontation Clause barred "testimonial" hearsay, specifically in Crawford itself, statements taken by the police from a crime witness who later refused to testify and could not be cross-examined. 541 U.S. at 68.

Although all nine Justices concurred in the result and the majority opinion commanded seven votes, the apparent consensus was misleading, partly because the Court declined to determine how far its new "testimonial statement" category extended. In fact, the majority opinion seemed to suggest a narrow reading of what counts as "testimonial." Crawford, 541 U.S. at 56 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy.").

Thus, the Court was sharply divided when, five years later, Crawford was extended to affidavits prepared in a state medical laboratory as to the quantity and nature of a seized drug. Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2531, 2542 (2009). Five Justices ruled that the affidavits were plainly made for purposes of trial and so amounted to witness testimony subject to the Confrontation Clause. Id. at 2532. However, four dissenters saw this as a mistaken extension of Crawford, see 129 S. Ct. at

-8-

2543 (Kennedy, J., dissenting), and--more important here--a necessary fifth vote for the majority limited his support to "formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," id. (Thomas, J., concurring).

Most recently, in Bullcoming v. New Mexico, 131 S. Ct. 2705 (2011), the Court extended Melendez-Diaz to a forensic laboratory report prepared for trial purposes that certified a machine read-out of blood alcohol level. Id. at 2709, 2717. This time, Justice Sotomayor provided the needed fifth vote, stressing that the certificate's primary purpose was as trial evidence, and adding: "this is not a case in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence." Id. at 2719, 2722 (Sotomayor, J., concurring).[2]

Abstractly, an autopsy report can be distinguished from, or assimilated to, the sworn documents in Melendez-Diaz and Bullcoming, and it is uncertain how the Court would resolve the question. We treated such reports as not covered by the Confrontation Clause, United States v. De La Cruz, 514 F.3d 121, 133-34 (1st Cir. 2008), cert. denied, 129 S. Ct. 2858 (2009), but

---

[2]The significance of this primary purpose test was underscored in Michigan v. Bryant, decided only last spring, where Justice Sotomayor--writing for five Justices--explicitly employed the primary purpose test in deciding that the dying statement of a mortally wounded victim to the police was not testimonial and so not barred by the Confrontation Clause. 131 S. Ct. 1143, 1156, 1165-67 (2011).

the law has continued to evolve and no one can be certain just what the Supreme Court would say about that issue today.  However, our concern here is with "clearly established" law when the SJC acted.

Melendez-Diaz and Bullcoming were decided after the SJC acted in this case, and the Crawford decision predating SJC review did not "clearly establish" that forensic laboratory reports were barred as testimonial.  We recently so held in Likely v. Ruane, 642 F.3d 99, 102 (1st Cir. 2011).  That close decisions in the later Supreme Court cases extended Crawford to new situations hardly shows the outcomes were clearly preordained.  And, even now it is uncertain whether, under its primary purpose test, the Supreme Court would classify autopsy reports as testimonial.

It is also unclear whether, even if the Court were to so classify them, the admissibility of in-court expert testimony that relied in some measure on such a report would be affected.  In such a case, a witness exists who can be cross-examined; and a long tradition exists of allowing experts to rely on hearsay where it is common practice in the profession to rely upon such evidence. E.g., Fed. R. Evid. 703; 2 Broun et al., McCormick on Evidence § 324.3, at 417-19 (6th ed. 2006).  One of the common examples is a testifying doctor who relies in part on medical tests or specialist reports.

Many experts in trials, in one degree or another, rely on information supplied by others who are not present to testify.

Several circuits, in addition to our own in De La Cruz, 514 F.3d at 134,[3] have said that the Confrontation Clause does not limit experts offering their own opinion regardless of the independent admissibility of the material relied upon.  The Supreme Court is now considering whether the expert may disclose that material to explain the opinion's foundation. People v. Williams, 939 N.E.2d 268 (Ill. 2010), cert. granted, 131 S. Ct. 3090 (U.S. June 28, 2011) (No. 10-8505).

In all events, we stress the present uncertainty of the law only to emphasize that it was even more unsettled at the time of Crawford just how far that decision would be extended beyond statements taken by the police for specific use at trial. Certainly it was not clearly established law at the time of the SJC decision that any part of Dr. McDonough's testimony violated clearly established Supreme Court precedent.  That is enough to resolve this case.

Affirmed.

---

[3]E.g., United States v. Turner, 591 F.3d 928, 933-34 (7th Cir. 2010), petition for cert. filed (U.S. Apr. 12, 2010) (No. 09-10231); United States v. Johnson, 587 F.3d 625, 636 (4th Cir. 2009), cert. denied, 130 S. Ct. 2128 (2010); United States v. Law, 528 F.3d 888, 912 (D.C. Cir. 2008), cert. denied, 129 S. Ct. 1023 (2009).