Opinion by Chief Judge KOZINSKI; Concurrence by Judge BEA.
OPINION
KOZINSKI, Chief Judge:
Edward L. Meras, a California state prisoner, appeals the district court’s order denying his petition for a writ of habeas corpus. He claims that testimony introduced during his trial violated his Sixth Amendment right to confrontation. He’s probably right, but he loses anyway.
Background
Intruders broke into Richard Peabody’s home, stabbed him multiple times and stole property. Soon after, police found a bloodstained pair of blue jeans in Meras’s apartment. Criminalist Jennai Lawson performed DNA analysis on the blood and produced a lab report concluding that it was Peabody’s. Lawson testified at Meras’s first trial, which ended in a hung jury. She was busy during Meras’s second trial, so the state called her supervisor, Jill Spriggs, to testify to the contents of her report. Meras objected that Lawson’s report was hearsay, and introducing it through Spriggs would violate his right to confront witnesses against him. The court overruled the objection, holding that the report was admissible under the business records exception to the hearsay rule, and allowed Spriggs to testify to its contents:
Q. [D]oes the file reflect where Ms. Lawson got [the jeans] from?
A. Yes, she got them from the freezer.
Q. Great. Did she also receive blood samples associated with ... Edward Meras and Richard Peabody?
A. Yes.
Q. And did she perform DNA typing analysis on those items of evidence?
A. Yes.
Q. And what were the results of the tests that she performed on those items?
A. The ... genetic profile, obtained from blood stains on the ... jeans[, is] the same as Richard Peabody’s.
The jury found Meras guilty of robbery, burglary and assault with a deadly weapon. He appealed the Confrontation Clause ruling, but the California Court of Appeal affirmed in a reasoned decision. People v. Meras, No. F044043, 2005 WL 1562735 (Cal.Ct.App. July 5, 2005) (unpublished). The California Supreme Court summarily denied review, and Meras did not file a petition for a writ of certiorari.
*1187 He did file a timely federal habeas petition, which the district court denied. Meras v. Sisto, No. l:07-cv-00400-JMD-HC, 2009 WL 382641 (E.D.Cal. Feb. 13, 2009) (unpublished order). We granted a certificate of appealability as to “whether the trial court violated [Meras’s] Sixth Amendment right to confrontation by admitting a non-testifying expert’s lab report and/or extrajudicial statements into evidence.”
Analysis
We review the district court’s decision de novo. Doody v. Ryan, 649 F.3d 986, 1001 (9th Cir.2011) (en banc). Under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), the district court was bound to reject Meras’s Confrontation Clause claim unless the state court’s adjudication resulted in a decision that either (1) “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,” or (2) “was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d). Meras relies on the former provision.
1. We must first decide what constitutes “clearly established Federal law, as determined by the Supreme Court of the United States,” for purposes of Meras’s Confrontation Clause claim. See Lockyer v. Andrade, 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Section 2254(d)’s “backward-looking language requires an examination of the state-court decision at the time it was made.” Greene v. Fisher, — U.S.-, 132 S.Ct. 38, 44, 181 L.Ed.2d 336 (2011) (internal quotation marks omitted). It “requires federal courts to focu[s] on what a state court knew and did,” so “clearly established Federal law” includes only Supreme Court decisions “as of the time the state court renders its decision.” Id. (internal quotation marks omitted) (emphasis and alteration in original); see Nardi v. Pepe, 662 F.3d 107, 110 (1st Cir.2011) (“[0]nly Supreme Court precedent in effect at the time of the state court adjudication on the merits counts as ‘clearly established Federal law----’” (quoting id.)). The last state court adjudication on the merits of Meras’s claim was that of the California Court of Appeal in 2005.
Meras relies on three Supreme Court decisions: Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), and Bullcoming v. New Mexico, — U.S. -, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). Of these, only Crawford was decided before the Court of Appeal affirmed Meras’s conviction, so only Crawford constitutes “clearly established Federal law” for purposes of our review. See Greene, 132 S.Ct. at 44; Nardi, 662 F.3d at 110 (“[T]he only pertinent Supreme Court precedent that applied at the time of the [2008] decision affirming Nardi’s conviction was Crawford.”).
Meras argues that we can nevertheless rely on Melendez-Diaz and Bull-coming because their holdings were “dictated by precedent existing at the time [his] conviction became final” and are therefore retroactive under Teague v. Lane, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (emphasis omitted). However, the Supreme Court recently explained that “the AEDPA and Teague inquiries are distinct. The retroactivity rules that govern federal habeas review on the merits—which include Teague—are quite separate from the relitigation bar imposed by AEDPA; neither abrogates or qualifies the other.” Greene, 132 S.Ct. at 44 (internal citation and quotation marks omitted). Even if applying Melendez- *1188 Diaz and Bullcoming to Meras’s claim would comport with Teague, doing so would contravene section 2254(d)(1) by “authorizfing] relief when a state-court merits adjudication resulted in a decision that became contrary to, or an unreasonable application of, clearly established Federal law.” Id. (internal quotation marks omitted) (emphasis in original).
In Greene, the Supreme Court left open the question of “[wjhether § 2254(d)(1) would bar a federal habeas petitioner from relying on a decision that came after the last state-court adjudication on the merits, but fell within one of the exceptions recognized in Teague, 489 U.S. at 311, 109 S.Ct. 1060.” Id. at 44 n. *; see Teague, 489 U.S. at 311, 109 S.Ct. 1060 (“[A] new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law” or constitutes a “watershed rule[ ] of criminal procedure.” (internal quotation marks omitted)). Meras doesn’t argue that Melendez-Diaz or Bullcoming fell within one of Teague’s exceptions, so we express no view on the question left unanswered by Greene.
2. In Crawford, 541 U.S. at 54-55, 124 S.Ct. 1354, the Supreme Court held that the Confrontation Clause prohibits the “admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination.” The Court of Appeal held that Lawson’s lab report was not “testimonial” under Crawford and therefore did not trigger Meras’s right to confrontation. Meras, 2005 WL 1562735, at *3. Meras must show that “there is no possibility fairminded jurists could disagree that the state court’s decision conflicts with” Crawford. Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011); see also Bobby v. Dixon, — U.S.-, 132 S.Ct. 26, 27, 181 L.Ed.2d 328 (2011) (per curiam).
Meras argues that forensic lab reports are testimonial because they’re produced in anticipation of litigation. But Crawford didn’t “clearly establish” such a rule. The Court identified “[vjarious formulations” that had been offered to define the “core class of ‘testimonial’ statements.” Crawford, 541 U.S. at 51, 124 S.Ct. 1354. One of these formulations included statements “made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” Id. at 52,124 S.Ct. 1354 (internal quotation marks omitted). But the Court did not adopt this formulation, or any other. It left “for another day any effort to spell out a comprehensive definition of ‘testimonial,’ ” and held only that, “[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.” Id. at 68, 124 S.Ct. 1354. This left the term susceptible to a broad range of reasonable applications. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). Indeed, the Court acknowledged that its “refusal to articulate a comprehensive definition [would] cause interim uncertainty.” Crawford, 541 U.S. at 68 n. 10, 124 S.Ct. 1354.
The question presented by Meras’s claim—whether forensic lab reports are testimonial—“was exactly one of those areas of uncertainty.” Likely v. Ruane, 642 F.3d 99, 102 (1st Cir.2011). State and federal appellate courts divided sharply over the question until the Supreme Court resolved the split in Melendez-Diaz, 129 S.Ct. 2527. Some courts held that forensic lab reports were testimonial. See State v. Johnson, 982 So.2d 672, 679-80 (Fla.2008) (compiling cases). Many others disagreed, *1189 and had rational bases for doing so. For example, dicta in Crawford explained that the Confrontation Clause incorporated “those [hearsay] exceptions established at the time of the founding.... Most of the[m] covered statements that by their nature were not testimonial—for example, business records.... ” Crawford, 541 U.S. at 54-56, 124 S.Ct. 1354; see also id. at 76, 124 S.Ct. 1354 (Rehnquist, C.J., concurring in the judgment) (“To its credit, the Court’s analysis of ‘testimony’ excludes at least some hearsay exceptions, such as business records and official records.”). A number of courts therefore held that forensic lab reports were nontestimonial because they qualified as business records. See, e.g., United States v. De La Cruz, 514 F.3d 121, 133 (1st Cir.2008); United States v. Ellis, 460 F.3d 920, 925-26 (7th Cir. 2006); Pruitt v. State, 954 So.2d 611, 616 (Ala.Crim.App.2006); Commonwealth v. Verde, 444 Mass. 279, 827 N.E.2d 701, 705 (2005); State v. Forte, 360 N.C. 427, 629 S.E.2d 137, 143 (2006); cf. State v. Thackaberry, 194 Or.App. 511, 95 P.3d 1142, 1145 (2004). These courts identified material differences between business records and the kinds of statements Crawford held to be testimonial—“prior testimony at a preliminary hearing, before a grand jury, or at a former trial” and “police interrogations.” Crawford, 541 U.S. at 68, 124 S.Ct. 1354. “Among other attributes, business records are neutral, are created to serve a number of purposes important to the creating organization, and are not inherently subject to manipulation or abuse.” Forte, 629 S.E.2d at 143.
Courts further distinguished forensic lab reports from testimonial statements on the ground that the former are “not based on speculation, opinion, or guesswork, but instead [are] founded in scientific testing to determine the physical and chemical composition of the substance and the amount or quantity of the substance.” Pruitt, 954 So.2d at 617 (citing Verde, 827 N.E.2d at 705). “Although the report is prepared for trial, the process is routine, non-adversarial, and made to ensure an accurate measurement.” State v. Dedman, 136 N.M. 561, 102 P.3d 628, 636 (2004). Unlike testimonial statements, lab reports “are neutral, having the power to exonerate as well as convict.” Forte, 629 S.E.2d at 143.
When the Supreme Court eventually held that forensic lab reports are testimonial, four Justices vigorously dissented. Writing on their behalf was Justice Kennedy, who was with the majority in Crawford. While continuing to believe Crawford was correctly decided, he wrote for the Melendez-Diaz dissenters that the majority “swe[pt] away an accepted rule governing the admission of scientific evidence” that had “been established for at least 90 years” and “extended] across at least 35 states and six Federal Courts of Appeals.” Melendez-Diaz, 129 S.Ct. at 2543 (Kennedy, J., dissenting). In the view of Justice Kennedy and those who joined him, Crawford “said nothing about scientific analysis or scientific analysts.” Id. at 2555. Rather, Crawford addressed “formal statements made by a conventional witness— one who has personal knowledge of some aspect of the defendant’s guilt.” Id. at 2543. The dissenters saw crucial differences between the two: “First, a conventional witness recalls events observed in the past, while an analyst’s report contains near-contemporaneous observations of the test. An observation recorded at the time it is made is unlike the usual act of testifying.” Id. at 2551. “Second, an analyst observes neither the crime nor any human action related to it. Often, the analyst does not know the defendant’s identity, much less have personal knowledge of an aspect of the defendant’s guilt.” Id. at 2552. “Third, a conventional witness responds to questions under interrogation. *1190 But laboratory tests ... are not dependent upon or controlled by interrogation of any sort.... [T]hey are [not] produced by, or with the involvement of, adversarial government officials responsible for investigating and prosecuting crime.” Id. (internal citation and quotation marks omitted).
In light of the extensive, reasoned disagreement between the lower courts as to the question presented by Meras’s claim, and between the Justices when they reached the issue, “we cannot say that the state court unreasonably applied clearly established Federal law.” Bailey v. Newland, 268 F.3d 1022, 1032 (9th Cir.2001); see Thompson v. Battaglia, 458 F.3d 614, 619 (7th Cir.2006) (“The variety in practice among the state courts and the various federal courts shows ... that there is no standard clearly established by the Supreme Court of the United States.... ”); Likely, 642 F.3d at 102 n. 5 (“[T]hat four Justices dissented in Melendez-Diaz reaffirms that Crawford had not resolved the question Melendez-Diaz addressed.”). We need not speculate as to whether “fair-minded jurists could disagree that the” Court of Appeal’s decision on Meras’s claim involved an unreasonable application of Crawford. Harrington, 131 S.Ct. at 786 (emphasis added). They in fact did.
* * *
We therefore have a case here where the state court probably committed constitutional error, but we are not free to correct it. This is the nature and effect of AEDPA. See Brown v. Payton, 544 U.S. 133, 148-49, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005) (Breyer, J., concurring) (“Were I a California state judge, I would likely hold that Payton’s penalty-phase proceeding violated the Eighth Amendment.... Nonetheless, in circumstances like the present, a federal judge must leave in place a state-court decision.... ”). The error could have been brought before the Supreme Court in a correctable posture, had Meras filed a cert petition after the California Supreme Court denied review in 2005. The case would have arrived at the Court nearly two years before Melendez-Diaz, and it’s possible the Court would have granted cert and decided in Meras’s case that forensic lab reports are testimonial. But Melendez-Diaz involved a lab report submitted without live testimony, whereas Meras’s case has the added complication that the report was introduced through the testimony of the author’s supervisor. The Court did not decide until 2011, in Bullcoming, that the right to confrontation could be satisfied only by the live testimony of a declarant. See Bullcoming, 131 S.Ct. at 2716 (“In short, when the State elected to introduce Caylor’s certification, Caylor became a witness Bull-coming had the right to confront.”). A properly phrased petition in Meras’s case could have raised both issues, and it’s not inconceivable that the Court would have granted cert and decided both, and perhaps also resolved the question flagged by Justice Sotomayor’s concurrence in Bull-coming. See id. at 2722 (Sotomayor, J., concurring in part) (“[T]his is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue.”). Meras does not challenge the effectiveness of his appellate counsel, so we have no occasion to decide whether failure to file a cert petition raising all of these issues was deficient or prejudicial.
AFFIRMED.