# United States Court of Appeals
## For the First Circuit

No. 15-2133

SINY VAN TRAN,

Petitioner, Appellant,

v.

GARY RODEN,

Respondent, Appellee.

No. 15-2134

NAM THE THAM,

Petitioner, Appellant,

v.

LISA A. MITCHELL,

Respondent, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Indira Talwani, U.S. District Judge]

Before
Torruella, Thompson, and Kayatta,
Circuit Judges.

Janet Hetherwick Pumphrey, for appellant Siny Van Tran.
Robert F. Shaw, Jr., with whom Law Offices of Robert F. Shaw,
Jr. was on brief, for appellant Nam The Tham.
Thomas E. Bocian, Assistant Attorney General, Criminal
Bureau, with whom Maura Healey, Attorney General of Massachusetts,
was on brief, for appellees Roden and Mitchell.

January 30, 2017

TORRUELLA, **Circuit Judge**.  Petitioners-appellants, Siny Van Tran ("Tran") and Nam The Tham ("Tham"), contest the district court's denial of their petitions for writs of habeas corpus under 28 U.S.C. § 2254.  They argue that the Commonwealth of Massachusetts's use of photocopies of United Airlines flight records at their trials violated their Sixth Amendment Confrontation Clause rights, albeit for slightly different reasons.  Tran contends that he had a right to confront someone who knew about United Airlines's procedures for verifying passenger identities at the time of the flight.  Tham contends that he had a right to confront the person who created the records.  After careful consideration, we affirm the district court's denial of habeas corpus relief.

## I. Background[1]

On January 12, 1991, six men were shot, execution-style, in the basement of an illegal gambling club in Boston's Chinatown district; only one survived the resulting injuries.  Commonwealth v. Siny Van Tran, 953 N.E.2d 139, 145 (Mass. 2011).  According to the testimony of the surviving victim, Pak Wing Lee ("Lee"), and

---

[1]  Because we must accept the findings of fact of the state court unless convinced by clear and convincing evidence they are in error, we recount the facts as found by the Supreme Judicial Court, and note supplementary facts from the record as such.  Lynch v. Ficco, 438 F.3d 35, 39 (1st Cir. 2006) (quoting McCambridge v. Hall, 303 F.3d 24, 26 (1st Cir. 2002) (en banc)).

the proprietor of the gambling club, Yu Man Young, Tran arrived at the gambling club at approximately 2:30 a.m. with another one of the victims after they had both been drinking at a nightclub together. Tran soon left by himself, returned to the gambling club, and left again. Tran returned once again, this time with Tham and another man, Hung Tien Pham ("Pham"). All three had guns. Upon entering the club, they told everyone to stop moving and kneel down. Lee felt a gun placed to the back of his head, heard a bang, and lost consciousness. Two hours later, Lee regained consciousness and stumbled out of the building to find help. A young couple passing by saw him and flagged down a security guard at a nearby hospital. The security guard contacted two police officers who entered the gambling club and found five people dead, all with gunshot wounds to the head.

Arrest warrants were issued for Tran, Tham, and Pham after the shootings, but they had already left the United States. Authorities in China arrested Tran in 1999, and Tham in 2000.[2] A grand jury in Massachusetts state court indicted Tran and Tham in 1999, and they were extradited from Hong Kong in December of 2001.

The Commonwealth jointly tried Tran and Tham in 2005. At trial, the Commonwealth sought to introduce a passenger manifest

---

[2] Pham has never been detained.

and ticket inquiry showing that on February 1, 1991 -- three weeks after the gambling club shooting -- passengers named Wah Tran,[3] Nam The Tham, and Hung Tien Pham flew on United Airlines ("United") from New York City to Hong Kong via Narita, Japan. The flight manifest -- a computer-generated report created for the pilot and flight crew listing all of the passengers on a flight with each passenger's seat number -- showed that "Wah Tran" sat in seat 53F and "Nam The Tham" sat in seat 46J on a flight from New York to Narita and both passengers had a connecting flight to Hong Kong. The manifest also showed that someone named "Hung Tien Pham" was on the flight and that the passengers named Tran, Tham, and Pham had the same "group code," meaning that they had purchased their tickets together. The ticket inquiry -- a computer-generated report from United's ticket database -- showed that tickets for "Tran/Wah Mr.," "Tham/Nam The Mr.," and "Pham/Hung Tien Mr." were purchased on the same date (January 30, 1991) and, based on their consecutive ticket information numbers, around the same time. An unidentified United employee gave the Boston police the manifest and ticket inquiry on February 12, 1991.

The Commonwealth argued that these records helped prove that Tran and Tham fled the country, and their flight was evidence

---

[3]  It is not disputed that Tran obtained a passport issued in the name of Wah Tran.

of their consciousness of guilt. Both Tran and Tham sought to exclude the documents on the grounds that they were improperly authenticated, were inadmissible hearsay, and violated their Confrontation Clause rights. Their motions were ultimately denied,[4] and the Commonwealth introduced the manifest and ticket inquiry as business records through the testimony of David Contarino ("Contarino"), the business manager of United in Boston. Contarino began working for United in 1999, and therefore was not a United employee at the time of the flight in question in 1991. Contarino authenticated the documents by stating that the passenger manifest and ticket inquiry contained almost the exact same identifying information that then-current United passenger manifests and ticket inquiries contained, and he described the various numbers and codes on each item. Contarino also testified that United created manifests and kept ticket information in the regular course of business. He stated that a United employee created a manifest before every flight to give to the crew. Contarino further testified that United entered information about

_____

[4] The trial court originally ruled in Tran and Tham's favor, but the Commonwealth sought interlocutory review by the Supreme Judicial Court of Massachusetts. A single justice resolved the appeal and concluded that the manifest and ticket inquiry were admissible subject to the prosecution laying a proper foundation. The prosecution did so, and then the district court admitted the documents.

every ticket at the time of purchase and stored that information in order to comply with federal regulations and for "revenue collection from credit card companies."

The jury convicted Tran and Tham of five counts of first-degree murder on theories of deliberate premeditation and extreme atrocity or cruelty, one count of armed assault with intent to murder, and one count of carrying a firearm without a license. Both petitioners were sentenced on the murder charges to five consecutive terms of life in prison. On the additional charges, they were both sentenced to an aggregate of twenty-four to twenty-five years to follow the consecutive life sentences.

Tran and Tham appealed their convictions to the Supreme Judicial Court of Massachusetts ("SJC"), asserting -- among other issues -- that the trial court erred in admitting the passenger manifest and ticket inquiry. In 2011, the SJC affirmed the convictions, stating that the "jury could rationally have concluded . . . that the documents were authentic," that the names on the documents were not hearsay because they "were not offered for their truth," and that the documents were not testimonial for Sixth Amendment purposes and, thus, their rights under the Confrontation Clause had not been violated. Siny Van Tran, 953 N.E.2d at 152, 154-57.

Tran and Tham filed petitions for writs of habeas corpus with the district court in 2013. Petitioners argued that their incarcerations violated federal law in a number of ways, including that they were deprived of the federal constitutional right to confront the witnesses against them. The district court denied each petition and issued a certificate of appealability with respect to the Confrontation Clause claim. Their timely appeals followed.

## II. **Analysis**

### A. Antiterrorism and Effective Death Penalty Act Standards

We review petitioners' claims under the deferential lens of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, habeas relief will not be granted unless the state court's adjudication of the claim on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2); Zuluaga v. Spencer, 585 F.3d 27, 29 (1st Cir. 2009).

It is well established that

> [a] state court decision is contrary to clearly
> established federal law if the state court applies a

-8-

rule that contradicts the governing law set forth by the Supreme Court or confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.

Linton v. Saba, 812 F.3d 112, 122 (1st Cir. 2016) (alterations in the original) (citations and internal quotation marks omitted). "And a state court adjudication constitutes an unreasonable application [of clearly established federal law] if the state court identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. (alteration in the original) (citations and internal quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of [the state court's] decision." Id. at 122-23 (alteration in the original) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Thus, to obtain federal habeas relief, a petitioner must show 'the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. at 123 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

## B. Petitioners' Claims

Petitioners argue that the introduction of the flight manifest and ticket inquiry at trial violated their Confrontation Clause rights.  Specifically, Tran argues that the admission of the flight manifest and ticket inquiry violated his Confrontation Clause right because he was not able to confront a witness who could testify that he and Tham were the individuals who boarded the United flight.  Tran contends that the manifest and ticket inquiry contained two levels of hearsay: (1) the documents themselves were out-of-court statements made by whoever created them; and (2) the names of the passengers were recorded by an out-of-court declarant who, in turn, relied on the out-of-court statements of the passengers who gave their names.  Tran argues that Contarino's testimony did not address United's procedures for verifying passengers' identities in 1991 and therefore only cured the first level of hearsay.  He claims that he had a right to confront someone who had personal knowledge about the accuracy of the names contained in the manifest given that, according to him, the Commonwealth relied on the documents for their truth -- i.e., to prove that he was on the flight from Boston to Narita and Hong Kong.

Additionally, Tran argues that the SJC's application of the facts was objectively unreasonable in holding that Contarino's

testimony properly authenticated the airline documents.  According to him, the Commonwealth needed to produce a witness who could explain where the documents came from.

Tham makes a slightly different argument than Tran. Tham argues that the admission of the manifest and ticket inquiry was improper because he did not have an opportunity to confront the individual who produced those documents.  Tham contends that the SJC had no way of knowing whether the documents were testimonial or not because of the lack of information presented about how they were produced.  He notes that in the context of the Fifth Amendment's right against self-incrimination, the production of records can be incriminating testimony.  Tham argues that this rule applies in the Sixth Amendment context, and that the Commonwealth's failure to present any evidence as to how the police obtained the documents or where they came from creates a Confrontation Clause violation.

## C. Discussion

In this case, the SJC held that Tran and Tham's Confrontation Clause rights were not violated because the manifest and ticket inquiry were neither testimonial nor offered for their truth.  Siny Van Tran, 953 N.E.2d at 154-57.  The SJC stated that the passenger manifest and ticket inquiry were admissible under the business records exception to the state rule against hearsay

-11-

evidence, Mass. Gen. Laws ch. 233, § 78. Id. at 154. The SJC also concluded that the statements contained within these documents were not offered for their truth, but rather for a nonhearsay purpose -- to show "that the statements were made by someone, even, perhaps, a person being untruthful, who held themselves out to be these men." Id. at 155. The SJC also concluded that, based on Contarino's testimony and other circumstantial evidence introduced at trial, "the jury could rationally have concluded, applying a preponderance of the evidence standard, that the documents were authentic." Id. at 152-53.

As to the confrontation challenge, the SJC noted that "the [C]onfrontation [C]lause guarantees a defendant the opportunity to confront any person, in the 'crucible of cross-examination,' whose 'testimonial' statements are introduced against him." Id. at 156 (quoting Crawford v. Washington, 541 U.S. 36, 50-52, 61 (2004)). It stressed that "[i]t is the testimonial character of any item of evidence that triggers the confrontation right." Id. (citing Meléndez-Díaz v. Massachusetts, 557 U.S. 305, 324 (2009)). It further noted that, as "[t]he Supreme Court has stated: '[b]usiness and public records are generally admissible absent confrontation . . . because -- having been created for the administration of an entity's affairs and not

-12-

for the purpose of establishing or proving some fact at trial --
they are not testimonial.'" Id. (third alteration in the
original) (quoting Meléndez-Díaz, 557 U.S. at 324). Relying on
these Supreme Court precedents, the SJC concluded that the
passenger manifest and ticket inquiry were created "for the
administration of an entity's affairs," and not in anticipation of
use at trial, as evidenced by Contarino's testimony, and, thus,
the documents were not testimonial and Tran and Tham's
Confrontation Clause rights had not been violated. Id. at 156-57
(quoting Meléndez-Díaz, 557 U.S. at 324).

The district court determined that the SJC's conclusion
that the documents were not testimonial and, thus, petitioners'
Confrontation Clause rights were not implicated, was not an
unreasonable application of Supreme Court precedent. Accordingly,
it denied habeas relief.

We review the district court's denial of habeas relief
de novo. Sánchez v. Roden, 753 F.3d 279, 293 (1st Cir. 2014).
The district court is not entitled to deference. Healy v. Spencer,
453 F.3d 21, 25 (1st Cir. 2006). Rather, we must "determine
whether the habeas petition should have been granted in the first
instance." Sánchez, 753 F.3d at 293.

Because it is undisputed that the SJC properly
recognized the controlling Supreme Court precedent, see Siny Van

-13-

_Tran_, 953 N.E.2d at 156 (citing _Crawford_, 541 U.S. at 51-52, 61; _Meléndez-Díaz_, 557 U.S. at 323-26), the SJC's determination that the admission of the airline records did not violate the Confrontation Clause will be upheld unless the SJC applied the principles of _Crawford_ and _Meléndez-Díaz_ in an objectively unreasonable manner or unreasonably refused to extend those principles to a new context where they should clearly apply. See _Linton_, 812 F.3d at 122.

As the SJC correctly noted, the Confrontation Clause applies only to evidence that is testimonial. _Davis_ v. _Washington_, 547 U.S. 813, 823-25 (2006). The Supreme Court has defined a "core class" of testimonial statements as including affidavits, custodial examinations, or prior testimony without cross-examination. _Crawford_, 541 U.S. at 51. Testimonial statements also include those made with "a primary purpose of establishing or proving past events potentially relevant to later criminal prosecution." _Bullcoming_ v. _New Mexico_, 564 U.S. 647, 659 n.6 (2011) (quotations and brackets omitted). Generally, courts do not label business records as testimonial as long as they are not created for the purpose of prosecution. _Meléndez-Díaz_, 557 U.S. at 322-24.

Here, the SJC could reasonably conclude that the manifest and ticket inquiry were not testimonial. Neither Tran

-14-

nor Tham contend that the manifest or ticket inquiry fell within Crawford's core class of testimonial documents. Rather, they focus their attacks on the documents' purpose. Petitioners take issue with the documents' unknown origin and argue that the Commonwealth failed to rule out the possibility that the manifest and ticket inquiry were created for the primary purpose of establishing past events relevant to a later criminal prosecution. They fail, however, to cite any on-point Supreme Court decisions stating that the unknown origin of otherwise standard business records makes those documents testimonial. See Hensley v. Roden, 755 F.3d 724, 732-33 (1st Cir. 2014), cert. denied, 135 S. Ct. 964 (2015) (noting that the Supreme Court has declined to "produce an exhaustive classification of all conceivable statements . . . as either testimonial or nontestimonial" (alteration in the original) (quoting Davis, 547 U.S. at 822)); Nardi v. Pepe, 662 F.3d 107, 112 (1st Cir. 2011) (rejecting habeas petition arguing that forensic laboratory reports were testimonial and "stress[ing] the present uncertainty of the law").

Contrary to petitioners' contentions, Supreme Court precedent suggests that the manifest and ticket inquiries were not testimonial. Contarino testified that United kept both the manifest and ticket information in its ordinary course of business. Contrary to Tham's argument, the act of an unknown United employee

-15-

handing these documents to the police does not make them testimonial. After all, business records must be handed to either the police or the parties in order to be introduced at trial and the Supreme Court has explicitly held that ordinarily business records are not testimonial. Meléndez-Díaz, 557 U.S. at 324; see also United States v. Fujii, 301 F.3d 535, 539 (7th Cir. 2002) (holding check-in and reservation records from Korean Airlines flight fit within business record exception and fact that "the information was printed out at the request of the INS does not deprive the printouts of its business-record character").

Tham's reliance on this court's decision in United States v. Cameron, 699 F.3d 621 (1st Cir. 2012) -- a circuit court case that post-dates the SJC's 2011 opinion -- is misplaced. Tham contends that Cameron supports his argument that the act of production can make evidence testimonial. In Cameron, Yahoo created reports whenever it suspected a user's account contained child pornography. Id. at 628-29. This court held that the reports, although created in Yahoo's ordinary course of business, were testimonial because the reports were always sent to the National Center for Missing and Exploited Children, "an organization that is given a government grant to forward any such reports to law enforcement." Id. at 644. In Cameron, it was not Yahoo's act of turning the reports over to law enforcement that

-16-

made the documents testimonial -- it was that Yahoo created the documents for the primary purpose of turning them over. In Tran and Tham's case, however, there is no evidence that the manifest and ticket inquiries were created for law enforcement. The production of the documents to the police does not change their primary purpose or make them testimonial.

Furthermore, Tran and Tham's arguments relating to the origin of the manifest and ticket inquiry go to authentication and not the Confrontation Clause. Petitioners are correct that Contarino could not testify directly about the documents' authenticity or whether they were at any point altered to contain petitioners' names; he could testify only that they bore similar markings to genuine United manifests and ticket inquiries. Although the Supreme Court has forbidden a witness from testifying about "another's testimonial statements," Bullcoming, 564 U.S. at 662 (emphasis added), as stated above, the manifest and ticket inquiry were not testimonial in the first instance. Moreover, even for testimonial documents, the Supreme Court has not clearly stated which witnesses the prosecution must call in the chain of custody. See Meléndez-Díaz, 557 U.S. at 311 n.1 ("[W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person

-17-

as part of the prosecution's case. . . . '[G]aps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility.'" (quoting United States v. Lott, 854 F.2d 244, 250 (7th Cir. 1988) (third alteration in the original)).[5]

In light of the above, we conclude that the SJC's decision did not contradict, nor was it an unreasonable application of, Supreme Court precedent.

### III. Conclusion

Because the SJC did not rule "contrary to" or unreasonably apply "clearly established Federal law," Linton, 812 F.3d at 122, we affirm the district court's denial of Tran and Tham's habeas corpus petitions.

**Affirmed.**

---

[5] Because we conclude that the manifest and ticket inquiry were not testimonial, we do not need to reach petitioners' additional argument that the documents constituted hearsay and they had the right to confront a witness who knew about United's identification procedures in 1991. See United States v. Castro-Davis, 612 F.3d 53, 64 n.14 (1st Cir. 2010) (noting that "Crawford draws a distinction between testimonial and non-testimonial hearsay and applies only to the former category of statements" (quoting Horton v. Allen, 370 F.3d 75, 84 (1st Cir. 2004))).