RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0053p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

PAUL EDWARD DANIEL,

*Petitioner-Appellant*,

*v.*

DEWAYNE BURTON, Warden,

*Respondent-Appellee*.

No. 18-1276

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-12308—Nancy G. Edmunds, District Judge.

Decided and Filed: March 27, 2019

Before: BOGGS, GIBBONS, and BUSH, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Phillip D. Comorski, Detroit, Michigan, for Appellant. B. Eric Restuccia, Linus Banghart-Linn, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Respondent.

---

## OPINION

---

BUSH, Circuit Judge. Paul Daniel was convicted of first-degree murder, conspiracy to commit murder, and possessing a firearm during the course of a felony. He appeals the order of the district court denying his petition for a writ of habeas corpus, which he sought pursuant to 28 U.S.C. § 2254. For the reasons that follow, we **AFFIRM** the district court's order.

## I.  BACKGROUND

This case arises from the drive-by shooting of Marcus Newsom on February 8, 2002. That evening, Paul Daniel, along with his brother, Peter, and their companions Leonard McGlown and Cordall Neal, traveled together in a van, pulled up alongside a car occupied by Newsom, and shot Newsom.  The quartet mistook Newsom for Jamal Bradley (the intended target), probably because Newsom was in an automobile that belonged to Newsom's sister, who was Bradley's girlfriend.  Newsom died from multiple gunshot wounds.

Based on eyewitness testimony, officers found and stopped the vehicle containing Daniel and his companions.  Upon retracing the route between the shooting and the location where Daniel and his companions were stopped, investigators recovered various firearms and gloves that had been discarded on the roadway.  Bullets from those firearms matched the type of bullets found in Newsom's body and in his sister's vehicle.  Daniel and his companions were arrested and tried for murder.

Three of the defendants—Daniel, his brother, and McGlown ("Defendants")—were tried together in Michigan state court.  Before trial commenced, the trial judge ordered each of the Defendants to wear a Band-It, an electronic restraint strapped onto the lower leg and concealed underneath clothing.  An officer holds the remote-control device used to set off the Band-It, which sends an electric shock into the prisoner's leg and body if the prisoner needs to be restrained.  Daniel's counsel objected, stating that the Band-It was "pretrial punishment" and Daniel had no history of acting out in the courtroom. R. 6-11, Page ID 666.  The judge overruled the objection, finding that "[t]he threat of danger and safety and security [was] [im]minent," the device was not "evident or apparent to anyone," and "[t]he electronic device . . . would not be arbitrarily activated." *Id.* at Page ID 667.  Defendants wore the Band-It throughout the nineteen-day trial, after which they were convicted of first-degree premeditated murder, conspiracy to commit first-degree murder, and felon in possession of a firearm.  The officers never activated or threatened to activate Daniel's Band-It.

## II. PROCEDURAL HISTORY

In 2012, Daniel appealed his conviction. The Michigan Court of Appeals granted his motion to remand to the trial court for an evidentiary hearing on the use of the restraints at trial. On remand, after a lengthy evidentiary hearing, the trial court found no error in its decision to order Defendants to wear electronic restraints and declined to grant a new trial. The Michigan Court of Appeals affirmed, *People v. Daniel*, No. 308329, 2014 WL 3844010 (Mich. Ct. App. Aug. 5, 2014), and the Michigan Supreme Court denied leave to appeal. *People v. Daniel*, 861 N.W.2d 32 (Mich. 2015).

Daniel then filed the instant § 2254 petition for habeas relief in the district court, alleging that he was denied his constitutional rights to due process, a fair trial, and to counsel when he was restrained during trial with the Band-It. Although the district court noted that the government argued the claims were procedurally defaulted, the court decided, for the purposes of judicial economy, to address the merits of Daniel's claims. On February 7, 2018, the district court denied habeas relief but granted a certificate of appealability only on the issue as to whether the Band-It unconstitutionally interfered with Daniel's ability to communicate with his counsel.

## III. STANDARD OF REVIEW

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a writ of habeas corpus may not be granted unless the state court's adjudication of the claim:

   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

We review a district court's denial of a habeas petition de novo. *See Cleveland v. Bradshaw*, 693 F.3d 626, 631 (6th Cir. 2012). The district court's findings of fact are reviewed

for clear error, and its legal conclusions on mixed questions of law and fact are reviewed de novo. *Gumm v. Mitchell*, 775 F.3d 345, 359–60 (6th Cir. 2014). "[T]he habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings were correct." *Henley v. Bell*, 487 F.3d 379, 384 (6th Cir. 2007) (citing 28 U.S.C. § 2254(e)(1)).

Although the government again argues that Daniel's claim is procedurally defaulted, we cut to the merits because Daniel's claim fails on the merits and a procedural analysis would only complicate the case. *See Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011).

## IV.  DISCUSSION

Daniel contends that the Band-It deprived him of his ability to communicate with his lawyer during trial because he was afraid that the device could go off and it might kill him. The Michigan trial court rejected his claim on the merits, which Daniel argues was "an unreasonable application of" clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). To succeed on that argument, he must show that no "fairminded jurist[]" could have rejected his claim that use of the Band-It violated his Sixth Amendment right to consult with counsel. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted); *see also White v. Woodall*, 572 U.S. 415, 427 (2014) ("[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citing *Harrington*, 562 U.S. at 103)).

Daniel's argument is similar to the defendant's argument in *United States v. Miller*, 531 F.3d 340 (6th Cir. 2008), in which the defendant challenged the court's order to wear a stun belt under his clothing throughout his trial. Though involving a stun belt and not a Band-It, we find that the analysis from *Miller* is applicable to the instant case. Like a stun belt, the Band-It is worn underneath the defendant's clothing, an officer uses a remote control to trigger either of the devices, and the devices employ electrical shock when set off. *Id.* at 343–44.[1] The defendant in

---

[1]We also held in *Miller* that though "the bulk of federal cases discussing the use of physical restraints during trial and sentencing, involved traditional methods of securing the accused, such as handcuffs and shackles . . .

*Miller* argued that he was "forced to sit through his entire jury trial under the constant threat of having" the electricity accidentally administered, and this "stifled [his] ability to communicate with his counsel due to the threat of being electrocuted," as Daniel also now argues. *Id*. at 347.

These arguments, however, contradict statements Daniel made at the remand hearing, in which he conceded that he was able to lean over, talk to his attorneys, and ask them questions. He also admitted that he was able to take notes, look at documents that his attorneys provided him, and discuss the trial with his brother. A deputy sheriff confirmed that he saw Daniel interact with his lawyer during the trial. Thus, there is no evidence in the record that Daniel was prevented from conferring with his lawyer. *See United States v. Orris*, 86 F. App'x 82, 86 (6th Cir. 2004) (upholding the district court's shackling order because "there is no indication whatsoever in the record that the shackling prevented [the defendant] from consulting with his attorney").

Furthermore, Lieutenant James Craig, the assistant jail administrator, testified that prior to it going off, the Band-It issues an alert tone. For example, when Daniel's brother attempted to "headbutt" a detective, the alert tone went off so that everyone in the vicinity, including Daniel, heard it. Daniel's brother then stopped resisting, so the electric shock was not employed. Thus, Daniel was aware that it was highly unlikely the Band-It would shock him accidentally. Furthermore, "we cannot find any Supreme Court precedent that speaks to the psychological impact of non-visible restraints and their interference with a defendant's ability to present a fair defense [or consult with counsel]." *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 843 (6th Cir. 2017).

Consequently, "[Daniel] has not established an unreasonable application of clearly established federal law." *Id.* Additionally, because there is no evidence that the Band-It hindered his communications with his attorney, "we cannot conclude that [Daniel] was prejudiced in his ability to aid in his own defense at trial." *Miller*, 531 F.3d at 347.

---

the 'same fundamental issues are implicated in the decision of the district court' to restrain a defendant through the use of a stun belt." 531 F.3d at 345 (citation omitted). We similarly hold here that this reasoning applies to the use of a Band-It.

To the extent that "[Daniel] challenges the finding that security concerns justified ordering the [Band-It], . . . he has not shown that 'it was based on an unreasonable determination of the facts in light of the evidence presented,'" *Adams v. Bradshaw*, 826 F.3d 306, 318 (6th Cir. 2016) (citing 28 U.S.C. § 2254(d)(2)), particularly considering the testimony of Lieutenant Craig and McGlown's attorney.  Lieutenant Craig testified that co-Defendant McGlown threatened to kill family members of a trial witness.  McGlown's attorney testified that he was concerned for his own personal safety throughout the trial, as well as McGlown's safety, because, among other things, the Daniel brothers had mouthed threats to him and McGlown.

## V.  CONCLUSION

For the above-mentioned reasons, the district court's judgment is **AFFIRMED**.