**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0106n.06

Case No. 19-3546

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 18, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JANERO MITCHELL, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| CHRISTOPHER LAROSE, Warden, | ) | OHIO |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE: COLE, Chief Judge; COOK and THAPAR, Circuit Judges.

COOK, Circuit Judge. An Ohio court convicted Janero Mitchell of aggravated murder and sentenced him to life in prison without parole. After exhausting state court remedies, Mitchell filed a federal habeas petition, claiming that the trial court conducted a flawed *Batson* hearing. The district court denied the petition, and we affirm.

**I.**

During the voir dire phase of Mitchell's trial, the prosecutor exercised peremptory challenges to dismiss two black jurors. Mitchell—an African-American man—did not object to the first strike. But when the prosecutor moved to excuse a second black juror, Christopher Whitfield, Mitchell raised a *Batson* objection. The prosecutor told the court that she sought to dismiss Whitfield because he shared a last name with other Youngstown residents who lived in

Whitfield's neighborhood and against whom the prosecutor's office had brought charges. She

worried that Whitfield's questionnaire failed to disclose prosecutions against family members.

The trial court decided to sustain the strike, saying:

Well, the court does find that the—I'm going to allow the excuse of him. And the court does acknowledge that there are other blacks sitting in—waiting in the back that are available. And Mr. Whitfield was not the only minority on this jury. So we will overrule that.

The trial proceeded and resulted in Mitchell's conviction for aggravated murder.

Mitchell's direct appeal and applications for state postconviction relief failed. He then filed this

habeas petition. The district court denied relief but granted a certificate of appealability on

Mitchell's claim that the trial court failed to make necessary credibility findings under *Batson*.

This appeal followed.

**II.**

In a habeas proceeding, we give fresh review to the district court's legal conclusions.

*Henderson v. Palmer*, 730 F.3d 554, 559 (6th Cir. 2013). But at the same time, the Antiterrorism

and Effective Death Penalty Act of 1996 significantly limits our review of any claim already

adjudicated in state court. *See* 28 U.S.C. § 2254(d)(1). The parties agree—as we do—that the

Ohio Court of Appeals decided Mitchell's *Batson* claim on the merits. *See State v. Mitchell*, 62

N.E.3d 820, 828–34 (Ohio Ct. App. 2016). That means we may grant relief only if the state court's

decision "was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Our

deference "reflects the view that habeas corpus is a guard against extreme malfunctions in the state

criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington

v. Richter*, 562 U.S. 86, 102–03 (2011).

Mitchell argues that the state court's rejection of his *Batson* claim unreasonably applied clearly established federal law. To succeed, he must show that the court's decision misapplied a Supreme Court holding, resulting in an "objectively unreasonable" error. *White v. Woodall*, 572 U.S. 415, 419–20 (2014). Even clear error will not suffice; Mitchell must demonstrate that the state court's reasoning was "so lacking in justification" that no fairminded jurist could agree with it. *Id.*

**III.**

The Equal Protection Clause forbids prosecutors from using race-based peremptory strikes. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). A *Batson* challenge to a peremptory strike necessitates a three-step, burden-shifting inquiry: First, the defendant must make a prima facie showing of discrimination. Second, the prosecutor must offer a nondiscriminatory reason for the strike. Third, the trial court determines whether the defendant established purposeful discrimination. *Id.* at 96–98.

Mitchell focuses on the trial court's handling of *Batson*'s third step. At that stage, *Batson* requires courts to undertake "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." 476 U.S. at 93. Mitchell argues that the trial court's laconic denial of his objection—"I'm going to allow the excuse of him"—violated *Batson* because the court failed to note explicitly whether it credited the prosecutor's proffered race-neutral rationale.

The Ohio Court of Appeals rejected Mitchell's argument. It held that because a trial court may express its "ruling on the credibility of a proffered race-neutral explanation . . . in the form of a clear rejection or acceptance of a *Batson* objection," the trial court's brief but clear rejection of the defense's motion adequately showed that it credited the prosecutor. *Mitchell*, 62 N.E.3d at 832.

That reasoning does not obviously misapply *Batson*. After all, "The Supreme Court has never directed trial courts to make detailed findings . . . before ruling on a *Batson* motion." *Caudill v. Conover*, 881 F.3d 454, 459 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 793 (2019); *see Miller-El v. Cockrell*, 537 U.S. 322, 347 (2003) ("[A] state court need not make detailed findings" to render a proper *Batson* ruling). Nor has the Supreme Court generally required trial courts to make credibility findings about a party's proffered race-neutral reason beyond a clear acceptance or rejection of the motion. Indeed, *Batson* itself "decline[d] . . . to formulate particular procedures to be followed" beyond the three-step framework. 476 U.S. at 99. While "the state court would have done well (and would have done better)" to make explicit findings about the prosecutor's proffered reason, *Caudill*, 881 F.3d at 459, Mitchell fails to show how the failure to do so plainly misapplies *Batson*. Absent an "objectively unreasonable" misapplication of a Supreme Court holding, we may not disturb the state court's judgment. *White*, 572 U.S. at 419.

Citing out-of-circuit authority, Mitchell argues that *Batson* requires a trial court to "explicitly rule whether it credited the prosecutor's proffered explanations for striking" jurors. *Galarza v. Keane*, 252 F.3d 630, 639 (2d Cir. 2001). As an initial matter, *Galarza* did not apply AEDPA. *See id.* at 635 n.4. But in any event, read in full context, *Galarza* faulted the trial court for its ambiguous ruling that failed to make clear whether its rejection of the defense's *Batson* motion covered all or only some of the jurors whose dismissal the defense challenged. *See id.* at 634, 636. In fact, a more analogous case shows that the Second Circuit shares our view that an "unambiguous rejection of a *Batson* challenge" without explicit credibility findings does not violate clearly established federal law. *Messiah v. Duncan*, 435 F.3d 186, 198 (2d Cir. 2006).

Mitchell also argues that the Ohio Court of Appeals "invented factual findings for the trial court," unreasonably applying *Batson* and *Snyder v. Louisiana*, 552 U.S. 472 (2008). *Snyder* held

that when a prosecutor dismisses a juror because of the juror's demeanor, "the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." 552 U.S. at 477. Because the prosecutor here did not seek to dismiss Whitfield because of his demeanor, *Snyder* does not apply.

Regardless, the alleged factual inventions—(1) that "Whitfield is not a noticeably common surname like Jones or Smith" and (2) that the prosecutor's office prosecuted other Whitfields living near Christopher Whitfield—stem from (1) common experience and (2) information that counsel related to the trial court during the *Batson* hearing. No holding in *Batson* or *Snyder* mandates that an appellate court ignore common sense or counsel's undisputed representations to the trial court. To the extent Mitchell argues that the state appellate court invented the trial court's no-discrimination finding, we repeat that a clear rejection of a *Batson* motion without explicit findings violates no clearly established federal law.

## IV.

The dissent suggests that the prosecutor proffered an explicitly race-based rationale for excluding Whitfield and that the trial court objectively misapplied *Batson* by accepting that rationale. At the outset, we note that this issue falls outside the certificate of appealability. Sitting in habeas, we consider only issues certified for appeal. *See* 28 U.S.C. § 2253(c). Among the three *Batson* claims that Mitchell advanced below, the district court authorized Mitchell to appeal only one—his argument that the trial court failed to make explicit credibility findings. Mitchell could have sought expansion of the certificate in this court but failed to do so. The dissent's consideration of a non-certified issue sidesteps the certificate's limits on this appeal, depriving the warden (who appropriately cabined his arguments) of an opportunity to respond.

The dissent argues that the district court authorized Mitchell to appeal all his *Batson* claims, reading one portion of the district court order certifying "Mitchell's *Batson* claim" as a general permit to appeal his various other *Batson* issues. We must respectfully disagree. First, the district court certified a singular "*Batson* claim" for appeal among the three *Batson* claims it analyzed. And the court specified which claim "deserve[d] encouragement to proceed further." Immediately following the short quotation the dissent emphasizes, the district court explained that it agreed with the state appellate court "that 'more thorough findings by the trial court in denying the defense *Batson* objections would have been helpful.'" That quotation draws from a portion of the state court opinion discussing Mitchell's explicit findings argument. The district court observed that while "no Supreme Court holding specifies the extent to which a trial court must make such a record, this Court acknowledges that reasonable jurists could debate that conclusion." Viewing the lack of precedent addressing the explicit findings issue as "expos[ing] a troublesome gap in *Batson* doctrine," the district court limited the scope of the certificate accordingly. We should not circumvent the certificate process by sua sponte expanding the scope of this appeal.

That said, the certificate does not delimit our jurisdiction. *See Gonzalez v. Thaler*, 565 U.S. 134, 142 (2012). Assuming, however, the propriety of entertaining the issue raised by the dissent despite its omission from the certificate, Mitchell's appeal still fails. During the *Batson* hearing, defense counsel spoke first and pressed the court to retain Whitfield, though he "stipulate[d] there are two remaining minority jurors in this case." After explaining that she sought to excuse Whitfield over her concern that Whitfield's questionnaire failed to disclose prosecutions against his relatives, the prosecutor echoed defense counsel's comments, saying "there's more than two [minority jurors] left in the back of the courtroom as well." The dissent suggests that the trial court "explicitly seized upon the prosecutor's race-based assertion" when it remarked "the court

does acknowledge that there are other blacks sitting in—waiting in the back that are available." Those remarks—the argument goes—show that the court accepted a race-based rationale for excluding a juror, violating *Batson*'s requirement for courts to "ensure that no citizen is disqualified from jury service because of his race." 476 U.S. at 99.

The Ohio Court of Appeals rejected this very argument, deciding that "mere acknowledgement of the composition of the present jury and venire would not constitute an error." *Mitchell*, 62 N.E.3d at 832. We agree. The Supreme Court itself has evaluated the racial composition of jury venires in *Batson* cases. *See Miller-El v. Dretke*, 545 U.S. 231, 254 (2005); *Cockrell*, 537 U.S. at 346. Indeed, the racial composition of the venire and the proportion of strikes exercised against a particular group can serve as powerful indicators of the strike proponent's intent. A repeated "pattern of strikes" against a particular group, *Batson*, 476 U.S. at 96, especially when the strike proponent appears determined to eliminate or nearly eliminate a particular group's representation in the venire, *see Cockrell*, 537 U.S. at 325, can provide probing evidence of pretext. The state appellate court and district court correctly held that acknowledging the racial composition of the panel violates no clearly established federal law.

Besides, the record seems to contradict the dissent's contention that the trial court denied the defense's motion *because* other black venire members remained available. Rather, after rejecting the *Batson* motion, the trial court said that "the court does acknowledge that there are other blacks sitting in—waiting in the back that are available." The state appellate court viewed the comment as a "mere acknowledgement," not an explanation of the court's ruling. *Mitchell*, 62 N.E.3d at 832. Because that's not an "unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), we cannot set aside the state court judgment on grounds that the trial court embraced a race-based rationale in denying the defense's *Batson* motion. At any rate, Mitchell expressly

disclaimed seeking any relief under the "unreasonable determination of the facts" prong of AEDPA at oral argument.

We AFFIRM.

COLE, Chief Judge, dissenting. The Equal Protection Clause guarantees that no citizen will be barred from jury service on the basis of race. In *Batson v. Kentucky*, the Supreme Court enshrined this proposition as a matter of clearly established constitutional law and enunciated a three-step process for courts to follow when adjudicating a claim that a prospective juror has been struck based on race. 476 U.S. 79, 95–98 (1986). *Batson* accordingly requires both state and federal courts to "ensure that no citizen is disqualified from jury service because of his race." *Id.* at 99. The Ohio courts in this case not only failed to uphold *Batson*'s mandate but also applied *Batson* and its progeny in an objectively unreasonable way. I would reverse the district court's judgment[1] and grant Mitchell a conditional writ of habeas corpus.

A district court's denial of a habeas petition is reviewed de novo. *Daniel v. Burton*, 919 F.3d 976, 978 (6th Cir. 2019). That said, on federal habeas review, a state court's decision is afforded a high degree of deference. A federal court may grant habeas relief with respect to a claim decided on the merits in state court only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This court has analyzed *Batson* claims, which often present a mixed question of law and fact, under the "unreasonable application" prong of section 2254(d). *See Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *see also Braxton v. Gansheimer*, 561 F.3d 453, 458 (6th Cir. 2009). Under this prong, the question is whether the state court's decision is "objectively unreasonable"; a merely

---

[1] Mitchell raised a *Batson* claim and a Confrontation Clause claim in his petition for habeas relief. The district court rejected both claims and denied the petition, but it granted a certificate of appealability "on Mitchell's *Batson* claim." (Judgment, R. 11, PageID 1177; *see also* Order, R. 10, PageID 1176.)

incorrect decision is not enough. *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). As the Supreme Court has said, habeas review is "not a substitute for ordinary error correction through appeal," but rather serves as "a 'guard against extreme malfunctions in the state criminal justice systems.'" *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).

This is one of those extreme cases. At issue is whether the state trial court fulfilled its duty under *Batson* "to determine if the defendant has established purposeful discrimination." *Batson*, 476 U.S. at 98. The Ohio Seventh District Court of Appeals decided that the trial court satisfied this requirement because *Batson* does not compel detailed factual findings, and "the trial court clearly rejected the *Batson* objection, which was sufficient to express its ruling." *State v. Mitchell*, 62 N.E.3d 820, 832 (Ohio Ct. App. 2016).

A review of the trial transcript, however, shows that the conclusion of the Ohio court of appeals is not objectively reasonable. The transcript reflects that after the state used its third peremptory challenge to strike Christopher Whitfield, a black man, Mitchell's trial counsel raised a *Batson* objection on the basis that Whitfield "[wa]s the second minority juror excused by the state of Ohio." (R. 6-2, PageID 452.) Mitchell's counsel also stipulated that there were "two remaining minority jurors" and predicted that these two jurors would be the only two minorities on the jury, assuming they were not later struck. (*Id.*) The prosecutor then proffered her reason for seeking to strike Whitfield:

> Your Honor, this one Christopher Whitfield, his last name, we have prosecuted many Whitfields. He's from the south side as well. So even though he didn't indicate that he had any family members that were prosecuted by us or who had convictions, I'm afraid that this Mr. Whitfield is related not only to Reginald Whitfield, who we just had a case with in Judge Durkin's court, but many of the other Whitfields who we have prosecuted [*sic*]. They are all from the south side.

(*Id.*, PageID 453.) Mitchell's counsel responded that the prosecutor could have asked Whitfield in voir dire if he had relatives with convictions—and indeed still could. The prosecutor, in turn, replied, "Your Honor, and there's more than two [minorities] left in the back of the courtroom as well. There's at least three or four in the back of the courtroom." (*Id.*) At this point, another prosecutor added that both the defendant and the victim were black. (*Id.*, PageID 454.) Following this exchange, the trial court permitted the peremptory strike, saying:

> All right. Well, the court does find that the—I'm going to allow the excuse of him. And the court does acknowledge that there are other blacks sitting in—waiting in the back that are available. And Mr. Whitfield was not the only minority on this jury. So we will overrule that.

(*Id.* at PageID 455.)

Thus, as the trial transcript makes evident, this is not a case—as the Ohio court of appeals found—where the trial court simply rejected the *Batson* objection without any explanation or reasoning. *See* 62 N.E.3d at 832. This is a case where the state trial court rejected the *Batson* objection using impermissible reasoning. The trial court said there were "other blacks" available on the venire and that Whitfield was "not the only" black person on the jury, so the court "overrule[d]" the *Batson* objection. (R. 6-2, PageID 455.) In other words, rather than fulfilling its "duty to determine if the defendant ha[d] established purposeful discrimination," as *Batson* instructs, the trial court here condoned the idea that it is permissible to strike one black person as long as there are others in the jury pool. *See* 476 U.S. at 98. This unquestionably conflicts with *Batson*'s clear requirement for courts to "ensure that no citizen is disqualified from jury service because of his race." *See id.* at 99.

The Ohio court of appeals nevertheless attempted to rationalize the trial court's ruling, but the court's attempted rationalization is not objectively reasonable. First, the Ohio court of appeals stated that it was Mitchell's defense counsel who "first brought up the fact that only two minorities

would remain on the jury without [Whitfield] and predicted he would not reach the other minorities in the back of the courtroom during voir dire." 62 N.E.3d at 832. This point misses the mark. A defendant unquestionably may rely on factors such as "a 'pattern' of strikes against black jurors" in establishing a prima facie case of purposeful discrimination. *Batson*, 476 U.S. at 97. What a prosecutor unquestionably may not do, however, is proffer a race-based excuse for excluding a juror. *See id.* Yet as the trial transcript clearly and convincingly shows, the prosecutor asserted that there were "at least three or four" minorities in the back of the courtroom—and she made this assertion after Mitchell's attorney challenged as pretextual her first proffered reason for striking Whitfield. (R. 6-2, PageID 453.) The trial court explicitly seized upon the prosecutor's assertion in permitting the state to strike Whitfield. That the prosecutor made her assertion after defense counsel brought up the composition of the jury does not make the prosecutor's assertion any less race-based. Nor does it permit the trial court to rely on the assertion in allowing the peremptory challenge. *See Batson*, 476 U.S. at 99 (requiring that "no citizen" be disqualified from jury service because of his or her race). Thus, for the Ohio court of appeals to suggest that the trial court's statement was permissible because defense counsel was the first one to bring up the composition of the jury is not an objectively reasonable application of *Batson*.

Second, the Ohio court of appeals attempted to rationalize the trial court's ruling by concluding that "because the effect of the challenge is a circumstance a court can consider in evaluating the issue of pretext, the mere acknowledgement of the composition of the present jury and venire would not constitute an error." 62 N.E.3d at 832. As an initial matter, to construe the trial court's statement as a "mere acknowledgement" is not objectively reasonable. The trial court's acknowledgement is the only elaboration the court provided in allowing the state's peremptory challenge. Following its acknowledgment, the trial court even said, "So we will

overrule [the *Batson* objection]." (R. 6-2, PageID 455.) And yet, the Ohio court of appeals refused to take the trial court at its word and instead presumed that the trial court allowed the state's peremptory challenge for some other, unstated reason.

The Supreme Court's holding in *Snyder v. Louisiana* clearly establishes that such a presumption is inappropriate when evaluating a *Batson* claim. In *Snyder*, the prosecutor proffered two reasons for striking a prospective black juror: (1) the juror "looked very nervous," and (2) the juror had indicated that he had student-teaching obligations. 552 U.S. 472, 478 (2008). The trial court simply stated that it was "going to allow the challenge," and nothing more. *Id.* at 479. The Louisiana Supreme Court presumed that the trial court credited the prosecutor's stated concern about the juror's nervous demeanor, but the United States Supreme Court held that the Louisiana Supreme Court's presumption was erroneous because the trial court made no specific finding on the record concerning the juror's demeanor. *See id.*; *see also State v. Snyder*, 942 So. 2d 484, 496 (La. 2006).

Likewise here, no specific finding in the record supports a presumption that the Ohio trial court credited the prosecutor's stated concern about Whitfield's relation to other Whitfields. Even worse, the Ohio court of appeals trivialized the specific statements that the trial court did make. This was an unreasonable application of clearly established federal law as determined in *Snyder*. *See* 552 U.S. at 479.

Additionally, the conclusion of the Ohio court of appeals that acknowledging the composition of the jury and venire "would not constitute an error" is objectively unreasonable. *See* 62 N.E.3d at 832. As the Supreme Court has repeatedly and unequivocally held, "The 'Constitution forbids striking even a single prospective juror for a discriminatory purpose.'" *Foster v. Chatman*, 136 S. Ct. 1737, 1747 (2016) (quoting *Snyder*, 552 U.S. at 478); *see also*

*Batson*, 476 U.S. at 95–96. We have accordingly held, "Where purposeful discrimination has occurred, to conclude that the subsequent selection of an African-American juror can somehow purge the taint of a prosecutor's impermissible use of a peremptory strike to exclude a venire member on the basis of race confounds the central teachings of *Batson*." *Lancaster*, 324 F.3d at 434; *accord Rice v. White*, 660 F.3d 242, 258 (6th Cir. 2011). Thus, for the state trial court to have accepted the presence of other black men or women on the venire as an excuse for allowing a peremptory challenge of a black prospective juror—and for the state appellate court to have concluded that it was appropriate for the trial court to have considered such a circumstance—is an objectively unreasonable application of *Batson* and its progeny.

Not only did the state courts unreasonably apply *Batson*, it is clear that a *Batson* violation occurred at Mitchell's trial. Here, the Ohio court of appeals credited the state's alleged concern that Whitfield was related to other Whitfields whom the state had prosecuted. *See* 62 N.E.3d at 832–34. But evaluating the plausibility of that concern "in light of all evidence with a bearing on it," as *Batson* instructs, shows that it was clear error for the court of appeals to have accepted the prosecutor's proffered explanation so readily. *See Miller-El v. Dretke* (*Miller-El II*), 545 U.S. 231, 252 (2005); *Batson*, 476 U.S. at 96–98. As Mitchell's defense counsel noted, the prosecutor could easily have asked—and, at that point in voir dire, still could ask—Whitfield whether he was related to the other Whitfields prosecuted by the state. That the prosecutor refused to do so is indicative of pretext. *See Miller-El II*, 545 U.S. at 246 (2005); *see also id.* at 250 n.8. Worse still, the prosecutor waved off defense counsel's concern, asserting that there were other black people in the jury pool.

The Ohio court of appeals suggests that even had the prosecutor questioned Whitfield, she reasonably could have remained concerned about Whitfield's relation to other Whitfields

prosecuted by the state. *See* 62 N.E.3d at 833–34. This reasoning, however, is mere post hoc rationalization and does nothing to establish that the prosecutor's stated concern as to Whitfield was plausible. Such reasoning also ignores the Supreme Court's warning that a *Batson* challenge "does not call for a mere exercise in thinking up any rational basis." *Miller-El II*, 545 U.S. at 252. Pretext "does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false." *Id.* Here, based on the evidence in the record, I can only conclude that the state appellate court's finding of no discrimination is unsupportable and clearly erroneous.

"Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief." *Miller-El v. Cockrell* (*Miller-El I*), 537 U.S. 322, 340 (2003). Where there have been "extreme malfunctions in the state criminal justice systems," a federal habeas court may properly intervene. *Harrington*, 562 U.S. at 102 (internal quotation marks and citation omitted). Here, the state trial court failed in its duty to ensure no person is excluded from jury service on the basis of race, and the state appellate court unreasonably condoned said abdication. Where racial discrimination in jury selection is condoned, the harm extends to the defendant, the excluded juror, and the entire community, as it "undermine[s] public confidence in the fairness of our system of justice." *Batson*, 476 U.S. at 87. A federal habeas court is allowed to remedy such an "extreme malfunction." Therefore, I respectfully dissent.