RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0109p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

YNDALECIO GAONA,

                    *Petitioner-Appellant,*

    *v.*

MIKE BROWN, Warden,

                    *Respondent-Appellee.*

No. 21-2799

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:13-cv-13204—Victoria A. Roberts, District Judge.

Argued: May 3, 2023

Decided and Filed: May 24, 2023

Before: BOGGS, McKEAGUE, and THAPAR, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** Eugene Zilberman, SMYSER, KAPLAN & VESELKA, L.L.P., Houston, Texas, for Appellant. Eric R. Jenkins, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Eugene Zilberman, SMYSER, KAPLAN & VESELKA, L.L.P., Houston, Texas, for Appellant. Eric R. Jenkins, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

McKEAGUE, Circuit Judge. Petitioner-Appellant Yndalecio Gaona challenges the district court's denial of his 28 U.S.C. § 2254 habeas petition, arguing that the state court that convicted him of various criminal charges improperly enhanced his sentence based upon a

previous uncounseled state misdemeanor conviction. He argues that because it was uncounseled, the conviction—which resulted in a sentence of time served—was unconstitutional under the Sixth Amendment, and thus it was unconstitutional for the state court to use the conviction to enhance his sentence. Because the law on this point is not clearly established, we affirm the district court's denial of Gaona's petition.

## I.

On January 5, 2011, Yndalecio Gaona fired a gun with the intent to kill a certain individual; he instead accidentally shot and injured a bystander. Based on this incident, Gaona pleaded guilty in Kent County Circuit Court in Michigan to assault with intent to murder and possession of a firearm during the commission of a felony. Gaona was sentenced to two years for the firearm conviction, to be served consecutively to a 17-to-50-year sentence for the assault conviction. In sentencing Gaona, the state trial court relied on a pre-sentencing report which gave Gaona ten points for Prior Record Variable (PRV) 5, which accounts for prior misdemeanor convictions. *See* Mich. Comp. Laws § 777.55(c). Under PRV 5, a defendant receives ten points when he has three prior misdemeanors. Mich. Comp. Laws § 777.55(c).[1] One of the misdemeanors that the report relied on stemmed from an incident in 2009, for which Gaona was (without the assistance of counsel) convicted of possession of marijuana via plea and sentenced to 30 days' time served on February 16, 2010.[2]

Gaona filed an application for leave to appeal his sentence in the Michigan Court of Appeals, arguing that his sentence "was based on inaccurate information, incorrectly scored guidelines, [and] a counselless [sic] misdemeanor," and that "the trial court failed to properly individualize the sentence to the offense and the offender." R. 17-5 at PID 258. The core of Petitioner's sentencing argument, as relevant here, was that under governing Supreme Court precedent, state courts may not rely on an uncounseled misdemeanor conviction in enhancing a

---

[1]If a defendant has only two prior misdemeanors, he would receive five points. *Id.*

[2]At the time of this conviction, Gaona was already serving a 300-day sentence due to probation revocation, which he received before pleading guilty to the marijuana misdemeanor. It is not clear from the record exactly when he was convicted of the probation offense and whether he was held for any amount of time solely for the purpose of detaining him until he could be tried for the misdemeanor.

sentence if that conviction resulted in a sentence of actual imprisonment, as he alleged the state court did with his marijuana conviction. This application was denied by the Michigan Court of Appeals for "lack of merit in the grounds presented." *Id.* at PID 250. The Michigan Supreme Court also denied leave to appeal.

Following Petitioner's failed state-level appeal, on July 25, 2013, he filed a habeas corpus petition under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Michigan, containing the same sentencing argument he presented to the state courts. He also filed a motion requesting to stay his petition so that he could exhaust a different claim (ineffective assistance of counsel) in state court, which was granted on August 5, 2013. In granting this motion, the court mandated that Petitioner file an amended petition including the new claim when he returned to the district court to lift the stay after the state proceedings concluded. Petitioner initiated state collateral review of his new ineffective-assistance claim, which the state courts rejected.

On October 13, 2017, Petitioner moved to reopen his federal habeas proceeding; the district court granted the motion. He did not file an amended petition. On June 6, 2021, the district court denied Gaona's habeas petition. The court rejected his ineffective-assistance claims as he did not file an amended habeas petition before the court including them, which the court had mandated in granting a stay. R. 23 at PID 424.[3] The court rejected Petitioner's sentencing claim because the state court's determination of the claim did not appear to be "contrary to[] or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* at PID 418–23 (quoting 28 U.S.C. § 2254(d)). Specifically, the district court found that no Supreme Court case clearly established that state courts may not, in enhancing a sentence, rely on an uncounseled misdemeanor that resulted in a sentence of time served, as was the case in Gaona's sentencing. However, the district court issued a Certificate of Appealability on that question, finding that "jurists of reason could debate the Court's resolution of Petitioner's claim that the trial court improperly relied on an uncounseled misdemeanor when sentencing Petitioner." *Id.* at PID 426. Gaona timely appealed. On appeal, he raises only the issue of whether the district court erred in rejecting his

---

[3]The court also concluded in the alternative that the claims were procedurally defaulted.

claim that his sentence was invalid due to the state trial court's reliance on an uncounseled misdemeanor that resulted in a sentence of time served.

**II.**

1.  Standard of Review

We review a district court's denial of a habeas petition de novo. *Daniel v. Burton*, 919 F.3d 976, 978 (6th Cir. 2019). "The district court's findings of fact are reviewed for clear error, and its legal conclusions on mixed questions of law and fact are reviewed de novo." *Id.* (citing *Gumm v. Mitchell*, 775 F.3d 345, 359-60 (6th Cir. 2014)). We presume that the state court's factual findings were correct unless the habeas petitioner can demonstrate otherwise by clear and convincing evidence. *See Miller-El v. Cockrell*, 537 U.S. 332, 340 (2003).

When a habeas petitioner challenges a state court's application of federal law in a claim that the state court decided on the merits, as is the case here,[4] under the Antiterrorism and Effective Death Penalty Act (AEDPA), the petitioner must demonstrate that the state court's adjudication of that claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). A state court's decision is contrary to clearly established law where the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Lafler v. Cooper*, 566 U.S. 156, 173 (2012) (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court unreasonably applies clearly established law when it

---

[4]The district court determined that the claim at issue in this case had been decided by the Michigan Court of Appeals on the merits when it issued a summary order denying Gaona's appeal for "lack of merit in the grounds presented." R. 23-1 at PID 420 (citing *People v. Gaona*, No. 306381 (Mich. Ct. App. Nov. 22, 2011)). As the district court correctly noted, *id.*, "absent some indication or Michigan procedural principle to the contrary, we must presume that an unexplained summary order is an adjudication on the merits for AEDPA purposes," *McClellan v. Rapelje*, 703 F.3d 344, 349 (6th Cir. 2013). The district court did not issue a Certificate of Appealability on this point, and Petitioner does not challenge this finding. Thus, we presume that Petitioner's sentencing claim was decided on the merits and apply AEDPA's deferential standard of review.

"identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams*, 529 U.S. at 413)). To succeed on a habeas petition, a petitioner must show more than that the state court made an error; he must demonstrate that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Clearly established law is found solely in decisions of the Supreme Court existing at the time of the state court decision. *See Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013). However, courts may look to lower-level decisions "to the extent they shed light on the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established." *Id.* at 775. But a circuit court "err[s] by consulting its own precedents, rather than those of [the Supreme] Court, in assessing the reasonableness of the [state court] decision." *Parker v. Matthews*, 567 U.S. 37, 48 (2012). A petitioner need not identify a Supreme Court case with identical facts to his own in order to receive habeas relief. *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("This is not to say that § 2254(d)(1) requires an identical factual pattern before a legal rule must be applied. To the contrary, state courts must reasonably apply the rules squarely established by this Court's holdings to the facts of each case." (cleaned up)). "[T]he lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme] Court's cases can supply such law." *Marshall v. Rodgers*, 569 U.S. 58, 62 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

2. Relevant Supreme Court Decisions—What is the Governing Principle?

Petitioner claims that the state court erred in allowing the use of an uncounseled misdemeanor that resulted in a sentence of time served to enhance his sentence. He admits that no Supreme Court case directly addresses this issue, but argues that the state court's decision unreasonably applied the "general standard emanating from [Supreme Court precedent] . . . that counsel is required if a prisoner is sentenced to a term of imprisonment." Appellant's Br. at 17. In order to determine whether Petitioner is correct that the state court unreasonably applied a

general principle emanating from Supreme Court decisions in this area, we must determine what the relevant general principle is. Petitioner relies primarily on Supreme Court cases that analyze when the right to counsel attaches and what types of uncounseled convictions may be relied upon in enhancing a sentence. We review the major decisions that Petitioner cites in order to more clearly define the contours of the principle he claims the state court misapplied.

First, in *Argersinger v. Hamlin*, 407 U.S. 25 (1972), the Court held that "no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Id.* at 37. The Court explained that it was "by no means convinced that legal and constitutional questions involved in a case that actually leads to imprisonment even for a brief period are any less complex than when a person can be sent off for six months or more." *Id.* at 33. *Argersinger* concluded that actual imprisonment was a punishment of a different kind, requiring counsel, noting: "the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or 'petty' matter and may well result in quite serious repercussions affecting his career and his reputation." *Id.* at 37 (citation omitted). The Court focused on the unique nature of "the actual deprivation of a person's liberty" in coming to its decision. *Id.* at 40. In *Scott v. Illinois*, 440 U.S. 367 (1979), the Court confirmed *Argersinger*'s holding that "no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." *Id.* at 374. The Court noted that "the central premise of *Argersinger*— that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment—is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel." *Id.* at 373. Next, in *Nichols v. United States*, 511 U.S. 738 (1994), the Court held that "an uncounseled misdemeanor conviction, valid under *Scott* because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." *Id.* at 749. Finally, in *Alabama v. Shelton*, 535 U.S. 654 (2002), the Court held that a suspended sentence constitutes actual imprisonment such that one may not be imposed unless the defendant was accorded counsel. *Id.* at 674. In doing so, the Court defined the "key Sixth Amendment inquiry" as "whether the adjudication of guilt corresponding to the prison sentence is sufficiently reliable to permit incarceration." *Id.* at 667.

What is the general principle to be divined from these cases?  It appears to be that an uncounseled conviction invalid under *Argersinger*/*Scott* may not be used to enhance a sentence for a subsequent offense.  *See Nichols*, 511 U.S. at 749; *Shelton*, 535 U.S. at 662; *Burgett v. Texas*, 389 U.S. 109, 115 (1967) ("To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense is to erode the principle of that case." (internal citation omitted)).  In turn, an uncounseled conviction is invalid under *Argersinger*/*Scott* when it results in "actual imprisonment."  *See Shelton*, 535 U.S. at 662 ("Subsequent decisions have reiterated the *Argersinger-Scott* 'actual imprisonment' standard.").  And, as *Shelton* informs us, a suspended sentence constitutes "actual imprisonment," even though the defendant receiving such a sentence may never spend a day in prison.  *Id.*  We thus can only find that the state court erred in Gaona's case if it unreasonably applied these principles.  *See Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) ("[AEDPA] recognizes . . . that even a general standard may be applied in an unreasonable manner.").

3.   Did the State Court Err in Applying the Governing Principles?

Petitioner argues in essence that his sentence of time served so obviously constitutes "actual imprisonment" that reasonable minds could not disagree that the uncounseled conviction was unconstitutional under *Argersinger*/*Scott*, and the reliance upon it to enhance his sentence unconstitutional under *Nichols*.  The government contends—and the district court found—that no clearly established law prohibited the use of Petitioner's conviction to enhance his sentence.  We conclude that the standards set by *Argersinger*, *Scott*, and *Nichols* are simply too general to find that the state court's application of them was unreasonable.  *See White v. Woodall*, 572 U.S. 415, 424 (2014).  To find the state court's application unreasonable would mean finding that no reasonable jurist could believe that a sentence of time served does not constitute "actual imprisonment."  This is a difficult finding to make.

First, nowhere in the cases cited by Petitioner does the Court define "actual imprisonment."  And the definition is not so obvious as Petitioner makes it out to be.  True, it may seem logical on its face to consider a sentence of time served "actual imprisonment," because the receiver of such a sentence did spend actual time in prison.  From that proposition

alone, one could conclude that the state court unreasonably applied *Argersinger*, *Scott*, and *Nichols* by using the conviction to enhance Petitioner's sentence.  But language in the key cases also cuts against this interpretation.  At several points, statements in the cases imply that the Court is concerned with imprisonment or deprivation of liberty imposed as a *result* of the uncounseled *conviction*.  *See, e.g.*, *Nichols*, 511 U.S. at 746 ("[T]he line should be drawn between criminal proceedings that *resulted* in imprisonment, and those that did not." (emphasis added)); *id.* at 750 (Souter, J., concurring) ("The Court in *Scott* . . . drew a bright line between imprisonment and lesser criminal penalties, on the theory . . . that the concern over reliability raised by the absence of counsel is tolerable when a defendant does not *face* the deprivation of his liberty." (emphasis added)); *Argersinger*, 407 U.S. at 37 ("[T]he *prospect* of imprisonment for however short a time will seldom be viewed by the accused as a trivial or 'petty' matter and may well result in quite serious repercussions affecting his career and his reputation." (emphasis added) (citation omitted)); *id.* at 33, 40 (noting the Court's concern with convictions that "*end up in*" or "actually *lead*[] to" imprisonment (emphasis added)); *Shelton*, 535 U.S. at 667 ("[T]he key Sixth Amendment inquiry [is] whether the adjudication of guilt corresponding to the prison sentence is sufficiently reliable to *permit* incarceration." (emphasis added)).  A conviction with a sentence of time served does not, logically, *result* in imprisonment.  "[W]ithin the contours" of *Argersinger*, *Scott*, and *Nichols*, then, "a fairminded jurist could conclude" that a sentence of time served does not constitute actual imprisonment because the conviction did not *result* in imprisonment, and thus that Petitioner's uncounseled conviction could be used to enhance his sentence.  *Woods v. Donald*, 575 U.S. 312, 318 (2015).

Petitioner also argues: "[A] punishment of time served implicates all of the same concerns reflected in *Argersinger*: 'prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or "petty" matter and may well result in quite serious repercussions affecting his career and his reputation.'"  Appellant's Br. at 6 (quoting *Argersinger*, 407 U.S. at 37); *see also Scott*, 440 U.S. at 373 (noting that its holding was based upon the proposition that "actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment").  But it is not so clear to us that a time-served sentence, whereby no additional incarceration is incurred, implicates *all* of the same concerns as a straightforward sentence of imprisonment.  With a time-served sentence, the defendant is given a punishment

that they have already suffered.  Obviously, an additional conviction with jail time officially imposed may have repercussions on one's life and career, even if no additional time is actually served—including, possibly, inclusion of the conviction/sentence in a future Federal Sentencing Guidelines calculation, *see, e.g.*, *United States v. Staples*, 202 F.3d 992, 998 (7th Cir. 2000); *United States v. Galvan*, 453 F.3d 738, 741 (6th Cir. 2006).  But just as obviously, a defendant who does not spend a single additional day incarcerated due to a sentence does not suffer any additional ills resulting from being physically imprisoned, away from their lives and jobs.  *Cf.* Alexandra Natapoff, *Misdemeanors*, 85 S. CAL. L. REV. 1313, 1322 (2012) ("[M]any arrestees plead guilty to petty offenses in exchange for a sentence of time served as a way of terminating what might otherwise be a longer period of incarceration . . ."); *United States v. Buter*, 229 F.3d 1077, 1079 (11th Cir. 2000) (noting, where the defendant had been convicted of probation violations and given sentences to run concurrently to previously served unrelated prison sentences, that "to permit assessment herein of three criminal history points for the state parole violations would be penalizing [the defendant] for something which the state authorities determined was not deserving of further incarceration," and emphasizing the fact that the defendant "walked into and out of the state courtroom a free man").  The concerns implicated by a time-served sentence are not so obviously identical to the concerns implicated by a regular prison sentence such that it was unreasonable of the state court to find that *Argersinger*/*Scott*/*Nichols* did not control in the context of Petitioner's case.

And Petitioner's frequent comparison to suspended sentences (found to constitute "actual imprisonment" in *Shelton*, 535 U.S. at 674) is not as helpful as he may think.  Suspended sentences are more different from time-served sentences than they are similar.  A suspended sentence may *result* in actual imprisonment after the conviction, if the sentence is appropriately triggered.  And it was exactly this reality that the Court in *Shelton* was concerned with:

> A suspended sentence is a prison term imposed for the offense of conviction.  Once the prison term is triggered, the defendant is incarcerated not for the probation violation, but for the underlying offense.  The uncounseled conviction at that point "*results* in imprisonment," *Nichols*, 511 U.S., at 746; it "*ends up* in the actual deprivation of a person's liberty," *Argersinger*, 407 U.S., at 40.  This is precisely what the Sixth Amendment, as interpreted in *Argersinger* and *Scott*, does not allow.

*Id.* at 662 (emphasis added).  A sentence of time served is the inverse of a suspended sentence: the incarceration has already definitively occurred, in the past.  So the *Shelton* Court's concern that with a suspended sentence a defendant may eventually end up incarcerated, *id.*, is not implicated.  Thus, while Petitioner might be correct that *Shelton* stands for the proposition that "actual imprisonment" occurs "even if the inmate is not *immediately* incarcerated *following* sentencing," Appellant's Br. at 5 (emphasis added), with sentences of time served, defendants are *never* incarcerated *following* sentencing.  With a suspended sentence, a defendant may eventually be imprisoned based upon his conviction, or he may never be imprisoned based upon his conviction—but it is the former possibility that *Shelton* is concerned with, not the latter.  From *Shelton*'s language, it does not so obviously seem that the Court finds the timing of incarceration completely "immaterial" to the analysis, as Petitioner claims, *see* Appellant's Br. at 18.  Because suspended sentences are so different in kind from time-served sentences, *Shelton*'s holding is simply inapplicable to Petitioner's case—or, at the very least, not so clearly applicable that the state court unreasonably applied it.  "In these circumstances, where the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White*, 572 U.S. at 424 (cleaned up).

Second, the question of whether a sentence of time served constitutes actual imprisonment such that counsel is required has divided the few courts that have addressed it.  *See* Marceau & Rudolph, *The Colorado Counsel Conundrum: Plea Bargaining, Misdemeanors, and the Right to Counsel*, 89 DENV. L. REV. 327, 361 n.199 (2012) (noting disagreement among courts regarding this question); *compare United States v. Marvin*, 2002 U.S. Dist. LEXIS 11269 at *9 (E.D. Pa. June 17, 2002) (no actual imprisonment where the defendant received a sentence of time served), *State v. Brown*, 995 So. 2d 1034, 1037 (Fla. Dist. Ct. App. 2008) (same), *Nicholson v. State*, 761 So. 2d 924, 931 (Miss. Ct. App. 2000) (same) *with United States v. Cook*, 1994 U.S. App. LEXIS 26802, at *10–11 (6th Cir. 1994) (conviction that resulted in sentence of time-served sentence "is not valid under *Scott* and *Nichols* for purposes of sentence enhancement"); *United States v. Feliciano*, 498 F.3d 661, 665 (7th Cir. 2007) (same); *State v. O'Neill*, 746 N.E.2d 654, 659 (Ohio App. Ct. 2000) ("[W]here an indigent misdemeanor defendant is not advised of his right to or provided with counsel, the court may not sentence that defendant to incarceration.  This is true even if the defendant need not report to jail due to the

credit he is given for time served."). While lower-court decisions do not constitute clearly established law in the AEDPA context, the fact that courts cannot come to a consensus on this question indicates that the state court's application of the *Argersinger/Scott/Nichols* principle was not unreasonable. *See Meras v. Sisto*, 676 F.3d 1184, 1190 (9th Cir. 2012); *Thompson v. Battaglia*, 458 F.3d 614, 619 (7th Cir. 2006). And, though its decision is not binding on this Court, the one federal court to address whether the law was clearly established on this point found that it was not. *See Glaze v. Warden Ridgeland Corr. Inst.*, 481 F. Supp. 2d 505, 510 (D.S.C. 2007).

Petitioner cites to a number of circuit-level precedents that he claims bolster his argument that the state court misapplied clearly established law. It is true that the Sixth Circuit, in an unpublished opinion, found that an uncounseled conviction resulting in a sentence of one day time served was invalid "under *Scott* and *Nichols* for purposes of sentence enhancement." *Cook*, 1994 U.S. App. LEXIS 26802 at *11–12. This might be some evidence that, putting aside AEDPA's standards, Petitioner's position is correct. But *Cook*, and other cases cited by Petitioner with similar holdings, arose on direct appeal, rather than in the habeas context. *See Cook*, 1994 U.S. App. LEXIS 26802 at *3–12; *Feliciano*, 498 F.3d at 662–63. They thus did not deal with the question of whether their holdings were dictated by Supreme Court precedent, which is the question we face here. And we may not look to these cases to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced," nor may we "canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the federal circuits that it would, if presented to [the Supreme] Court, be accepted as correct." *Marshall*, 569 U.S. at 64. *Cook* and *Feliciano* are insufficient to overcome the ambiguities in Supreme Court precedent described above.

Petitioner also cites cases dealing with the Federal Sentencing Guidelines, arguing that the fact that (some) courts consider time spent awaiting trial to be "time actually served" under various Guidelines provisions is evidence that a sentence of time served constitutes actual imprisonment. Appellant's Br. at 20–21 (citing, *inter alia*, *United States v. Hall*, 531 F.3d 414, 419 (6th Cir. 2008) and *States v. Staples*, 202 F.3d 992 (7th Cir. 2000)). Beyond the fact that these cases arose in the context of interpreting the Guidelines' specific language, again, this

Court cannot look to the substance of circuit precedent in this manner—extrapolating principles from an entirely different context—in determining whether the law was clearly established by the Supreme Court. *See Marshall*, 569 U.S. at 64; *cf. Parker v. Matthews*, 567 U.S. 37, 49 (2012) ("Nor can the Sixth Circuit's reliance on its own precedents be defended in this case on the ground that they merely reflect what has been 'clearly established' by our cases. The highly generalized standard for evaluating claims of prosecutorial misconduct set forth in [the relevant Supreme Court case] bears scant resemblance to the elaborate, multistep test employed by the Sixth Circuit here."); *Renico v. Lett*, 559 U.S. 766, 779 (2010) ("The [circuit-level] *Fulton* decision, however, does not constitute 'clearly established Federal law, as determined by the Supreme Court,' so any failure to apply that decision cannot independently authorize habeas relief under AEDPA. Nor, as the dissent suggests, can *Fulton* be understood merely to "illuminat[e]" [the Supreme Court case] *Washington*. *Washington* nowhere established [*Fulton*'s] three factors as a constitutional test." (cleaned up)).

Finally, Petitioner makes the policy argument that if he must under circuit precedent in the Guidelines context "suffer all the consequences of being sentenced to thirty days imprisonment, then he should have been entitled to the assistance of counsel to aid him in avoiding those consequences." Appellant's Br. at 21. That may or may not be true—but it is an argument appropriate for direct appeal, where the court would not be bound by AEDPA's clearly-established standard. Here, in this context, it simply has no relevance. *Cf. Hawkins v. Alabama*, 318 F.3d 1302, 1308 (11th Cir. 2003) ("While this policy argument might seem to have some debatable force, we can readily say that its conclusion is not compelled by [the relevant Supreme Court precedent].").

All this is to say: the question posed by Petitioner's case is a difficult one to answer. And where that is so—where reasonable minds may disagree—a federal court simply cannot conclude, under AEDPA, that the state court unreasonably applied clearly established law. *See White*, 572 U.S. at 427 ("[T]here are reasonable arguments on both sides—which is all [the state] needs to prevail in this AEDPA case."). "Actual imprisonment" is not defined in the Supreme Court case law as it stands—and to decide whether a time-served sentence counts as actual

imprisonment would not be applying a general principle but extending one. This, the Supreme Court has made clear, is not proper in the AEDPA context. As the Court said in *White*:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error. . . . if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. . . . AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

572 U.S. at 426 (cleaned up); *see also Woods*, 575 U.S. at 318–19 ("The Michigan Court of Appeals' refusal to apply [a previous Court case] to these circumstances was not the 'extreme malfunction' required for federal habeas relief." (quoting *Harrington*, 562 U.S. at 102)). While it is true that "the difference between applying a rule and extending it is not always clear," *White*, 572 U.S. at 427 (quoting *Yarborough*, 541 U.S. at 666), we cannot say here that the principles from *Scott* and *Nichols* are "fundamental enough" such that "the necessity to apply" them is "beyond doubt" in this case. *Id.*

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002). Because we cannot say that the state court's decision was "objectively unreasonable," *Yarborough*, 541 U.S. at 665, we affirm the district court's denial of Gaona's habeas petition.

## III. CONCLUSION

For the reasons stated above, we AFFIRM.